[Civ. No. 50180. Second Dist., Div. Four. May 18, 1978.]

VIRGINIA L. FRANTZ, Plaintiff and Respondent, v.
SAN LUIS MEDICAL CLINIC et al., Defendants and Appellants.

**COUNSEL**

Dale D. Billips, Horvitz, Greines & Horowitz, Ellis J. Horvitz, Donald L. A. Kerson, Hoge, Felton, Jones & Appel, Paul Coffee and Raymond E. Mattison for Defendants and Appellants.

Tom Halde and David Howard Battin for Plaintiff and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—In an action for medical malpractice, plaintiff Virginia Frantz sought damages for personal injury from defendants San Luis Medical Clinic, a partnership; Glenn C. Millar, M.D.; and American Medical International, Inc., doing business as Sierra Vista Hospital.

Trial was by jury. Plaintiff was awarded the sum of $100,000 against all defendants. Defendants have appealed from the judgment. We reverse the judgment for reasons set forth below.

Dr. Millar and the Clinic (hereinafter, Dr. Millar) contend on this appeal that there was insufficient evidence of negligence on his part to support the judgment against him. All defendants contend that erroneous jury instructions were given and that jury misconduct occurred. We briefly summarize the evidence presented at trial, viewing that evidence, as we must, in the light most favorable to the plaintiff, who prevailed below.

I

*The Factual Background*

Viewed in the light most favorable to plaintiff, the evidence establishes that in 1972, plaintiff was a young married woman, 23 years of age, in good health, and pregnant. She consulted Dr. Bramwell Anthony, an obstetrician at the San Luis Medical Clinic, who saw her periodically during her first, uneventful pregnancy.

In the early morning hours of December 2, 1972, a Saturday, Dr. Anthony learned that plaintiff was in labor. He telephoned the Sierra Vista Hospital and gave instructions to Barbara Malone, a registered nurse, concerning plaintiff who was en route to the hospital. One instruction was to inject plaintiff with 50 milligrams of Phenergan, commonly used as a mild tranquilizer to relieve anxiety and dispel nausea. Phenergan also contains a caustic agent known as Phenol.

Plaintiff was admitted to the hospital at 6:15 a.m. on the morning of December 2. Sometime prior to 7 a.m., Sandra Rodriguez, a registered nurse with six months experience, injected plaintiff's right buttock with the Phenergan, using a 22-caliber gauge needle one and one-half inches long. Nurse Rodriguez knew, as the result of her recent training, that an injection into or near the sciatic nerve located in the lower back would cause immediate and irreparable damage to the nerve. She knew that care must be taken to inject the needle perpendicularly to the point of entry. Nurse Rodriguez did not record in the labor room records the time the injection was given, as standard nursing practice required.

According to plaintiff's testimony, upon receiving the injection, she immediately experienced a severe burning pain radiating downward from her right buttock to her right leg and foot; that she so informed Nurse Rodriguez. The hospital records contain no entry of plaintiff's complaints of pain. There was general agreement among the medical experts who

testified at trial that such a complaint from a woman in labor was an "unusual" one, which would have been so entered as a standard nursing practice.

Plaintiff also testified that, throughout the day, she complained of right leg pain to the nursing staff and to her own relatives who were present. However, no recording of her complaints was made by the nursing staff. Plaintiff stated that the pain was sufficiently severe so that she attempted to carefully position herself during labor to try to lessen the pressure.

Dr. Anthony made a brief appearance at the hospital on the morning of December 2, but heard nothing about the right leg pain. It was Dr. Anthony's weekend off duty, and plaintiff was to be under the care of his partner, Dr. Millar. Dr. Millar appeared at the hospital at 6 p.m. on Saturday evening of December 2, and read the labor room records which revealed nothing concerning plaintiff's injection complaints. Plaintiff stated that she specifically advised Dr. Millar of what had occurred, but that he took no action. Plaintiff's neurologist testified at trial that by the time Dr. Millar examined plaintiff at 6 p.m., the damage to the sciatic nerve was irreversible, and nothing could have been done to alleviate it. Dr. Millar examined plaintiff periodically throughout the night. On Sunday morning, December 3, 1972, at 3:49 a.m., after receiving other injections and a spinal anesthetic, plaintiff delivered a healthy baby girl.

Plaintiff testified that her right leg pain continued to be severe. She could not nurse the baby; she had difficulty caring for the child and doing ordinary housework; she could not stand, sit, or lie down for any length of time. The pain continued, in somewhat lessened form, and was present at the time of trial.

Dr. Brown, a neurologist, and Dr. Stephenson, another neurologist (called upon to give an "objective" opinion by Dr. Coyle, a neurologist at the San Luis Medical Clinic), agreed in their testimony that plaintiff's symptoms were the result of permanent injury from the injection of Phenergan close to her sciatic nerve by Nurse Rodriguez on December 2, 1972. Dr. Brown testified that the damage was immediate; that had any physician been alerted to the mishap, the injection of a saline solution within four hours of the injection might have alleviated the condition. All the medical experts agreed that steroids could not have been given to plaintiff until after the birth, when whatever alleviative effect they might have had would have been too late.

## II

### *The Sufficiency of the Evidence To Support a Judgment for Plaintiff*

It is established law that plaintiff, in order to prove negligence on the part of a defendant, must establish a duty owed, a breach of that duty, proximate cause of injury and damages. "An essential element . . . is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." (Prosser, Law of Torts, (4th ed. 1971) Proximate Cause, p. 236.) This element is known as "proximate cause." ■ There is no dissent in the California decisional law that proof of proximate cause is a prerequisite for recovery of damages for negligence. (See, e.g., *Puckhaber* v. *Southern Pacific Co.* (1901) 132 Cal. 363, 364-365 [64 P. 480]; *McKellar* v. *Pendergast* (1945) 68 Cal.App.2d 485, 489 [156 P.2d 950].)

It is conceded that the liability of San Luis Medical Clinic was based upon the liability of Dr. Millar. The evidence in the case at bench established that when Dr. Millar first examined plaintiff at the hospital at 6 p.m. on December 2, 1972, the damage to plaintiff's sciatic nerve had long since occurred. Hence, even if Dr. Millar had properly diagnosed the injury, there was nothing he could have done. It is of significance that no evidence was introduced to show that the requisite standard of care in San Luis Obispo's medical community dictated that Dr. Millar make periodic contact with the hospital during a patient's early labor. Nor can any inference be drawn that, had Dr. Millar made such contact, he would have been advised by the attending nurses of plaintiff's true condition.

There were potentially two independent bases for establishing negligence on the part of the hospital nurses. One basis was that the original injection was administered negligently. A second basis of negligence was that the reaction of the nurses to plaintiff's complaints was below the professional standard of care; at a minimum these complaints should have been recorded in the hospital records. There was unanimous expert testimony at trial that supported this second basis.

No evidence was introduced relative to the duty which might be imposed on a nurse to initiate contact with a treating physician after

receiving an unusual complaint of pain from a woman in labor. In any event, through the daytime hours of December 2, Dr. Millar was not advised of the painful condition of plaintiff's right leg at a time when he conceivably could have done something about it.

In *Rimmele* v. *Northridge Hosp. Foundation* (1975) 46 Cal.App.3d 123 [120 Cal.Rptr. 39], plaintiff sued, among others, the attending physician and the hospital for negligent injections of her right buttock. The *Rimmele* court reversed a defense verdict for the hospital, whose nurses had administered the injections, but upheld the defense verdict for the doctor and the registered nurse who had administered a general anesthetic. The court observed that "[n]either Dr. Greenberg nor Mr. King administered any injection there and there is no evidence that either was the principal of any nurse who administered that treatment." (*Id.,* at p. 128.)

As in *Rimmele,* the evidence in the case at bench is lacking that Dr. Millar was in any way connected with the cause of plaintiff's injury, the immediate damage to her sciatic nerve. There was no evidence that an injection of Phenergan is dangerous in and of itself; while Dr. Millar's partner authorized the injection, Dr. Millar did not administer the injection. Dr. Millar was not informed in timely fashion of the plaintiff's complaint of severe pain following the injection; any failure to diagnose the cause of the pain could not, under the circumstances, be said to have proximately contributed to plaintiff's injury.

As there was no evidence establishing a reasonable causal connection between any act or omission on Dr. Millar's part and plaintiff's injury, the evidence is insufficient to sustain the judgment against Dr. Millar and the San Luis Medical Clinic.

However, the evidence was sufficient to support the judgment against the defendant hospital. This evidence, as set forth above under heading I, The Factual Background, was sufficient to establish that an injection of Phenergan into plaintiff's buttock was negligently administered by a nurse employed by defendant hospital, and that such injection caused irreversible damage to plaintiff's sciatic nerve. Expert testimony was to the effect that this procedure was below the requisite standard of medical care for a hospital such as the defendant hospital.

## III

### *The Question of the Correctness of the Res Ipsa Loquitur Presumption Instructions*

All of the defendants contend that the trial court, by giving erroneous instructions relative to the res ipsa loquitur doctrine, committed prejudicial error which entitles defendants to a reversal.

The record reveals that the trial court gave a modified BAJI instruction No. 2.60, as *requested* by the plaintiff. This instruction is set forth in full in the footnote below.[1]

The trial court then gave the standard medical malpractice res ipsa loquitur presumption instructions, BAJI No. 6.35, BAJI No. 6.36 (5th ed. 1969), and also BAJI No. 4.02 (1970 revision) (5th ed. 1969, 1975 pocket pt., p. 29).[2]

---

[1]"In this action, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

"1. As to defendant, AMERICAN MEDICAL INTERNATIONAL, INC., a corporation, acting through its employees, that it was negligent.

"2. As to defendants, GLENN C. MILLAR, M.D. and SAN LUIS MEDICAL CLINIC, a partnership, that the medical care and treatment given to plaintiff by GLENN C. MILLAR, M.D. or a partner of the SAN LUIS MEDICAL CLINIC, was below the standard of care afforded by physicians treating patients in the community.

"3. That the conduct of the defendants or either of them was a proximate cause of the injury and damages to plaintiff.

"4. The nature and extent of plaintiff's injuries and damages.

"Defendants have the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

"1. In connection with the doctrine of res ipsa loquitur, as will be hereafter stated to you, the defendants have the burden of going forward with the evidence necessary to balance the inference of negligence under that doctrine by a showing either:

"(a) All of the facts necessary to prove that a definite cause for the injury was not attributable to any negligence of a defendant; or

"(b) That the cause of the injury to the plaintiff was a cause other than defendants' lack of care or violation of the medical standard of practice in the community.

"By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, then your finding upon that issue must be against the party who had the burden of proving it.

"In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it."

[2]BAJI No. 6.35: "You must decide the following question[s] concerning the injury in this case:

Evidence Code section 646, subdivision (b), provides that "[t]he judicial doctrine of res ipsa loquitur is a presumption affecting the burden of producing evidence." It is to be distinguished, therefore, from a presumption that affects the burden of proof. (Evid. Code, § 606.) A presumption that affects the burden of proof imposes upon the party against whom it operates the burden of proving (by a preponderance of the evidence or other appropriate burden-of-proof standard) the nonexistence of the presumed fact. (Evid. Code, §§ 606, 607.)

On the other hand, a presumption that affects the burden of producing evidence imposes upon the party against whom the presumption operates *only* the obligation to introduce evidence which will *support* a finding of the nonexistence of the presumed fact. (Evid. Code, § 604.) This burden on the opponent of a presumption that affects the burden of producing evidence is obviously far less than the burden of proof imposed upon the opponent of a presumption that is classified as a presumption that affects the burden of proof. (Evid. Code, § 606.)

"Is it the kind of injury which ordinarily does not occur in the absence of negligence?

"[Whether the injury is one which ordinarily does not occur in the absence of negligence is to be determined from the evidence presented in this trial by physicians and surgeons called as expert witnesses.]

"Was the injury caused while the plaintiff was exclusively under the care or control of the defendant[s]? The plaintiff is not required to identify the particular agency or instrumentality which caused the injury if he is unable to do so because of his physical condition at the time the Phenergan injection was [administered].

"Was the injury due to any voluntary action or contribution on the part of the plaintiff which was the responsible cause of his injury?

"If, and only if, you find that the plaintiff's injury was of a kind which ordinarily does not occur in the absence of negligence; that it was caused while the plaintiff was exclusively under the care or control of defendant[s]; and that it was not due to any voluntary action or contribution by the plaintiff which was the responsible cause of his injury, you are instructed as follows:"

BAJI No. 6.36: "In this case, it is your duty to determine first whether the injury for which plaintiff seeks to recover damages was proximately caused by the phenagan [*sic*] administered by the defendant American Medical International Inc's nurse, Sandra Rodriguez.

"If you find that such medication was not a proximate cause of any injury to plaintiff, then you will find against the plaintiff and in favor of that defendant. On the other hand, if you find that plaintiff's injury was proximately caused by such medication administered by the defendant's nurse then you are further instructed as to that particular defendant that:"

BAJI No. 4.02: "From the happening of the [injury] involved in this case, you may draw an inference that a [proximate] cause of the occurrence was some negligent conduct on the part of the defendant.

"However, you shall not find that a [proximate] cause of the occurrence was some negligent conduct on the part of the defendant unless you believe, after weighing all the evidence in the case and drawing such inferences therefrom as you believe are warranted, that it is more probable than not that the occurrence was caused by some negligent conduct on the part of the defendant."

■ The foundational or basic facts of the res ipsa loquitur presumption are well established. They are that "the injury (1) is of a kind that ordinarily does not occur in the absence of someone's negligence; (2) is caused by an agency or instrumentality within the exclusive control of the defendant; and (3) is not due to any voluntary action or contribution on the part of the plaintiff . . . ." (*Slater* v. *Kehoe* (1974) 38 Cal.App.3d 819, 829 [113 Cal.Rptr. 790].)

If the plaintiff establishes the basic facts of the res ipsa loquitur presumption and the defendant does not contest the existence of these basic facts, but disputes the existence of the presumed fact—that defendant's negligence was a proximate cause of plaintiff's injury—defendant's burden is only to introduce evidence sufficient to "support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence, . . ." (Evid. Code, § 646, subd. (c).)

A defendant may, of course, introduce evidence to dispute both the existence of the basic facts of the res ipsa loquitur presumption, and the existence of the presumed fact that defendant's negligence was a proximate cause of plaintiff's injury.

In medical negligence cases, a defendant may introduce evidence to establish that the treatment administered to plaintiff by defendant was *not* the proximate cause of the injury complained of by plaintiff, in which case the res ipsa loquitur presumption would not become applicable for consideration as an issue. In such a case, BAJI instruction No. 6.36 is a customary instruction to be given to the jury for the determination of the issue. (See fn. 2 herein.) If the jury decides against defendant on this issue of proximate cause, BAJI instruction No. 6.35 is the customary instruction (see fn. 2 herein)—called the conditional res ipsa instruction —to guide the jury in consideration of the disputed issue of whether the basic facts of the res ipsa loquitur presumption are established.

Finally, to guide the jury in its consideration of the effect of the res ipsa loquitur presumption, in terms of the existence or nonexistence of the presumed fact of defendant's negligence as a proximate cause of plaintiff's injury, BAJI instruction No. 4.02 (see fn. 2 herein) is the appropriate instruction.

It was explained in *Rimmele,* quoting from the Law Revision Commission's comment (1970 addition) to Evidence Code section 646,

" '[b]ecause of the evidence contesting the presumed conclusion of negligence, the presumptive effect of the doctrine vanishes, and the greatest effect the doctrine can have in the case is to support an inference that the accident resulted from the defendant's negligence. . . .' " (*Rimmele, supra,* 46 Cal.App.3d 123, 130.)

Thus, the jury makes the determination of whether to draw an inference of negligence. But Evidence Code section 646, subdivision (c)(2), requires, as set forth in the last paragraph of BAJI No. 4.02 that "[t]he jury shall not find that a proximate cause of the occurrence [injury] was some negligent conduct on the part of the defendant unless the jury believes, after weighing all the evidence in the case and drawing such inferences therefrom as the jury believes are warranted, that it is more probable than not that the occurrence [injury] was caused by some negligent conduct on the part of the defendant."

 It is undisputed that, in light of Evidence Code section 646, when the defendant produces evidence sufficient to sustain a finding that defendant was not negligent or that any negligence on his part was not a proximate cause of plaintiff's injury, the res ipsa loquitur presumption disappears and plaintiff has the burden of proving, by a preponderance of the evidence, that plaintiff's injury was proximately caused by the negligence of defendant.

 In the case at bench, defendant hospital contends that the jury was misled and confused by the instructions given (see fns. 1 and 2), primarily because of the modified BAJI instruction No. 2.60, which stated that defendants had the burden of proving, by a preponderance of the evidence, certain facts in connection with the res ipsa loquitur presumption. This modification of BAJI No. 2.60 was clearly erroneous. But plaintiff argues that no error could result because of the court's instructions given immediately thereafter, setting forth the correct effect of the res ipsa loquitur presumption as a presumption that imposes upon a defendant *only* a burden of producing evidence—not a burden of proof by a preponderance of the evidence.

The modification of BAJI instruction No. 2.60, given by the trial court in the case at bench, imposed on defendant hospital the burden of proving, by a preponderance of the evidence, the production of "evidence necessary to balance the inference of negligence under that doctrine [res ipsa loquitur] by a showing either: [¶] (a) All of the facts necessary to prove that a definite cause for the injury was not attributable to any

negligence of a defendant; or [¶] (b) That the cause of the injury to the plaintiff was a cause other than defendants' lack of care or violation of the medical standard of practice in the community."

This modified BAJI No. 2.60 instruction stated that there was an "inference of negligence" under the doctrine of res ipsa loquitur which defendant hospital had the burden of *balancing* by a preponderance-of-the-evidence proof. This language suggested that the inference of negligence was a *compelled* one—to be drawn by the jury in the absence of such preponderance-of-the-evidence proof by defendant hospital. This is clearly error as the question of whether defendant hospital had produced evidence sufficient to sustain a finding that no negligence of the hospital was a proximate cause of plaintiff's injury, either because the hospital was not negligent or because any negligence of the hospital was not a proximate cause of plaintiff's injury, was a question for the court to determine, not the jury.

The modified portion of BAJI No. 2.60, given by the trial court, is in direct conflict with BAJI instructions Nos. 6.35, 6.36 and 4.02, also given by the trial judge. ■ Moreover, it appears from the record that the trial court gave the three res ipsa loquitur presumption instructions in an incorrect order, with BAJI No. 6.35 first, BAJI No. 6.36 next and finally BAJI No. 4.02. This order could only result in further confusing the jury. BAJI No. 6.36 is a preliminary instruction to BAJI No. 6.35, with BAJI No. 4.02 designed to follow BAJI No. 6.35—not BAJI No. 6.36.

BAJI No. 6.36 is designed to be given first, as it requires the jury to determine whether the treatment provided by the defendant hospital—the injection of Phenergan by the hospital nurse—was the proximate cause of plaintiff's injury, a matter contested by defendant hospital. Only upon a determination that such injection *was* the proximate cause of plaintiff's injury, does the conditional res ipsa loquitur instruction of BAJI No. 6.35 become relevant for the jury's determination. BAJI No. 4.02, which sets forth the operation of the res ipsa loquitur presumption, can only logically follow BAJI No. 6.35 which permits, but does not require, the jury to draw an inference that defendant's negligence was a proximate cause of plaintiff's injury from a finding of the existence of the three basic facts of the presumption set forth in BAJI No. 6.35. The giving of BAJI No. 4.02, following BAJI No. 6.36, which deals with the issue of whether the hospital's injection of Phenergan into plaintiff was a proximate cause of plaintiff's injury—constituted obvious error as it told the jury that an inference of negligence could be drawn from the

happening of the injury to plaintiff without the jury first finding that the three basic facts of the res ipsa loquitur presumption had been established.

In view of the palpably incorrect instruction—the modified portion of BAJI No. 2.60—requested by plaintiff and given by the trial court, and its conflict with BAJI instructions Nos. 6.35 and 6.36, and the giving of BAJI instructions Nos. 6.35, 6.36 and 4.02 in an incorrect order, we have a record of incorrect, contradictory and confusing instructions on the doctrine of res ipsa loquitur. The question presented is whether these errors constitute reversible error.

The evidence presented by plaintiff was certainly sufficient to sustain the jury's verdict in plaintiff's favor. But defendant hospital also introduced evidence that was sufficient to sustain a verdict in its favor. Thus, the defense evidence disputed plaintiff's testimony as to her complaints after the injection administered by the hospital nurse. Dr. Millar, a defendant, and Dr. Anthony, plaintiff's initial treating physician, both associated with defendant San Luis Medical Clinic, testified that the cause of plaintiff's injury was the spinal anesthetic administered by an anesthesiologist who was not an agent or employee of the defendant hospital. Dr. Smith, who examined plaintiff on behalf of defendants, testified that, in his opinion, plaintiff had a "temporary neurological defect, primarily subjective, but some findings of weakness as a result of the spinal anesthesia." Dr. Coyle, a physician also associated with defendant San Luis Medical Clinic, disagreed with the other experts and expressed an opinion that the cause of plaintiff's injury was a postpartum outlet syndrome caused by the "fetal parts pressing against the plexus and pressing that against bone that was behind the plexus."

In *Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353], the court stated: "Generally speaking if it appears that error in giving an improper instruction was likely to mislead the jury and thus to become a factor in its verdict, it is prejudicial and ground for reversal. [Citation.] To put it another way, '[w]here it seems probable that the jury's verdict may have been based on the erroneous instruction prejudice appears and this court "should not speculate upon the basis of the verdict." ' [Citations.]" In addition, however, the *Henderson* court added: " 'The determination whether, in a specific instance, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all the circumstances of the case, including the evidence and

the other instructions given. No precise formula can be drawn.' " (*Id.,* at pp. 670-671.)

The rule expressed in *Henderson* was reiterated in *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 59 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878], in which the court remarked: "Whether a jury has been misled by an erroneous instruction or by the overall charge must be determined by an examination of all the circumstances of the case including a review of all of the evidence as well as the instructions as a whole."

Applying the principles of *Henderson* and *Bertero,* we conclude that an examination of the entire record, including a review of all the evidence and the instructions as a whole, dictates a finding by us that the erroneous and confusing instructions had the probable effect of misleading the jury. The evidence was sharply conflicting as to whether plaintiff's injury was caused by a negligent injection administered by defendant hospital's nurse, or by a spinal anesthetic administered by an anesthesiologist who was not an agent or employee of the defendant hospital, or by a postpartum outlet syndrome. The evidence pointing to defendant hospital's negligence cannot be said to be overwhelming in nature. Because of this fact, we conclude that the errors in the instructions had the probable effect of misleading the jury to the prejudice of defendant hospital.

In view of our holding, we need not discuss other contentions made by defendant hospital as such matters are not likely to arise upon a retrial.

The judgment is reversed as to defendant American Medical International, Inc., a corporation, doing business as Sierra Vista Hospital.

The judgment is reversed as to defendants San Luis Medical Clinic and Glenn C. Millar, M.D., with instructions to the trial court to enter judgment in favor of these two defendants.

Files, P. J., and Hupp, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.