[Civ. No. 56164. Second Dist., Div. Three. May 27, 1980.]

SECURITY PACIFIC NATIONAL BANK, Plaintiff and
Respondent, v.
ASSOCIATED MOTOR SALES, Defendant and Appellant.

COUNSEL

Samuel Reisman for Defendant and Appellant.

Lillick, McHose & Charles, Anthony Liebig, Robert L. Morrison and M. David Minnick for Plaintiff and Respondent.

OPINION

**POTTER, Acting P. J.**—Defendant Associated Motor Sales (hereinafter AMS) appeals from a summary judgment in favor of plaintiff Security Pacific National Bank (hereinafter SPNB).

SPNB's complaint alleged two causes of action. The first sought to recover an overdraft of approximately $188,000 in the commercial checking account of AMS at SPNB, which resulted from the dishonor

by the payor banks of approximately $311,925 in checks indorsed and deposited to AMS's account. The second cause of action sought to impose indorser's liability upon AMS in respect of the same dishonored checks.

In its answer, AMS admitted the allegations of paragraph 21 of the complaint which alleged that "AMS presented, endorsed and negotiated to [SPNB] for deposit numerous checks drawn by all of the other defendants, and each of them, payable to the order of AMS," except that it denied "that the checks AMS presented, endorsed and negotiated to [SPNB] for deposit were drawn by all of the other defendants, and each of them."

In addition, paragraph 35 of the complaint stated in particular the aggregate total of the checks from each payor and alleged "AMS endorsed all of the above defendants checks and negotiated and deposited said checks in its commercial checking account...." The answer of AMS admitted that "AMS endorsed certain checks and deposited said checks in its commercial checking account."

Moreover, AMS altogether failed to answer and thereby admitted the allegations of paragraphs 28, 29, 30, 31 and 32 of the complaint, each of which alleged that AMS "endorsed and negotiated said checks to [SPNB] for deposit in its commercial checking account with [SPNB]."

AMS also pled five affirmative defenses; only one of these is pertinent to this appeal. The fifth affirmative defense alleged: "All or part of the alleged checks which are the subject matter of the complaint were not timely dishonored."

SPNB's motion for summary judgment was supported by three declarations of Olga Skoro, an assistant cashier of SPNB, responsible for the AMS account. These declarations submitted a detailed accounting showing the amount of the overdraft produced by 26 checks which were dishonored by the payor banks. The checks totaled $311,925. The declarations attached copies of: (1) each of the checks returned by the payor banks with their stamp, stating that acceptance or payment was refused for reasons consistent with dishonor; (2) the deposit ticket accompanying each deposit; and (3) the written "Notice to Depositor" from SPNB advising AMS of the dishonor of each of the checks. The declarations included Skoro's statement with respect to the dishonor of each check, as follows: "....I reviewed the records reflecting the date

of dishonor of each check by the payor banks and in each case, the checks were timely dishonored within the midnight deadline utilized in bank collection procedures."

The Skoro declarations also dealt with the notice of dishonor of the checks given by SPNB to AMS. In that respect, Skoro stated: "I was present when Mr. Levine[1] was advised of the return of the checks referred to in the Notices to Depositor attached hereto as Exhibits 1-6. In each case such notice was given to Mr. Levine within one day after SPNB learned that the checks were being returned unpaid."

No counterdeclarations were filed by AMS relating to any of the foregoing factual showing. AMS, however, did file a declaration of an officer of the Federal Reserve Bank of San Francisco stating that the checks of each of the payor banks were coded for collection through the Federal Reserve system.

### Contentions

AMS contends that summary judgment was foreclosed by the existence of triable issues of fact as to whether: (1) the checks were indorsed by AMS, (2) the checks were timely dishonored by the payor bank, and (3) timely notice of dishonor was given by SPNB to AMS.

SPNB contends that no triable issue of fact remains because: (1) the indorsement of the checks by AMS was admitted by its answer;[2] (2) uncontradicted facts showing dishonor by the payor banks were shown; (3) lack of notice of dishonor by SPNB to AMS was an affirmative defense not raised by AMS's answer; and (4) in any event, uncontradicted facts establishing timely notices of dishonor were shown.

### Discussion

*Summary*

■ Summary judgment was properly granted on the second cause of action to enforce the liability of AMS as an indorser of the dishonored checks. The answer of AMS admitted its indorsement of the checks.

---

[1]Mr. Levine was president of AMS and verified its answer in that capacity.

[2]Additional contentions of SPNB relating to indorsement do not require discussion in view of our agreement with this contention.

Timely dishonor of the checks was established by SPNB's proof (copies of the returned checks) that they were returned with a purported stamp of the payor bank that acceptance or payment was refused for reasons consistent with dishonor.[3] Timely notice of dishonor by SPNB to AMS was established by the Skoro declaration stating that AMS's president was personally advised of each dishonor within one day of its receipt by SPNB.[4]

SPNB's entitlement to judgment having thus been established, it is unnecessary to decide whether liability was also shown under the first cause of action based upon the overdraft.

*AMS's Indorsement of the Checks
Is Admitted by Its Answer*

The above quoted excerpts from the complaint and answer demonstrate that AMS failed to deny and even expressly admitted the indorsement of the returned checks. Consequently, the allegations of the complaint in this respect must "be taken as true" (Code Civ. Proc., § 431.20). The status of AMS as indorser was, therefore, clearly established.

California Uniform Commercial Code section 3414 provides for the liability of indorsers, stating: "[E]very indorser engages that upon dishonor and any necessary notice of dishonor... he will pay the instrument according to its tenor at the time of his indorsement to the holder...."

SPNB's right to recover on the second cause of action, therefore, required only that it prove that the checks were dishonored and that timely notice of dishonor was given by it to AMS.

*Dishonor of the Checks Was
Established by SPNB's Proof*

As proof of dishonor, SPNB relied upon the returned checks each of which bore a stamp of the payor bank stating that the checks were re-

---

[3]SPNB's misplaced reliance upon the conclusory statement in the Skoro declaration that "the checks were timely dishonored within the midnight deadline utilized in bank collection procedures" is, therefore, unnecessary.

[4]It is, therefore, unnecessary to pass upon SPNB's contention number (3) that lack of notice of dishonor was an affirmative defense not raised by AMS's answer.

turned because there were insufficient funds, uncollected funds or the check should be referred to the maker. Paragraph 24 of the complaint stated that these notations indicated "that payment would not be made to [SPNB]...." The answer failed to controvert this allegation; consequently, the character of the notations is admitted.

Section 3510 of the California Uniform Commercial Code provides: "The following are admissible as evidence and create a presumption of dishonor and of any notice of dishonor therein shown:

"	.	.	.	.	.	.	.	.	.	.	.	.	.

"(b) The purported stamp or writing of the drawee, *payor bank* or presenting bank on the instrument or accompanying it *stating* that *acceptance or payment has been refused for reasons consistent with dishonor*;" (Italics added.)

The meaning of "dishonor" as used in section 3510 is stated in California Uniform Commercial Code section 3507, subdivision (1)(a), as follows: "(1) An instrument is dishonored when

"(a) A necessary or optional presentment is duly made and due acceptance or payment is refused or cannot be obtained within the prescribed time or *in case of bank collections the instrument is seasonably returned by the midnight deadline* (Section 4301);..." (Italics added.)

The presumption of section 3510, therefore, is that the instrument has been timely returned by the payor bank in accordance with the provisions of California Uniform Commercial Code section 4301, which allows a payor bank to revoke provisional settlements by midnight of the day following the day of receipt. The applicability of this deadline is not affected by the fact the checks are cleared through the federal reserve system. Though such collections are governed by the provisions of 12 Code of Federal Regulations, sections 210.12 and 210.9 (*Community Bank* v. *Federal Reserve Bk. of San Francisco* (9th Cir. 1974) 500 F.2d 282 (as mod., 525 F.2d 690, cert. den. (1974) 419 U.S. 1089 [42 L.Ed.2d 681, 95 S.Ct. 680]), the midnight deadline is the same under both the federal and the state provisions.[5]

---

[5]The only difference between the federal regulation and the California code provision is that in order to make a provisional settlement under the federal regulation, the payor

Consequently, the presumption of section 3510 that the document is dishonored, that is, "seasonably returned by the midnight deadline," per California Uniform Commercial Code section 3507, refers to the same midnight deadline under both the federal regulation and the state statute.

The effect of the presumption of Commercial Code section 3510 is governed by California Uniform Commercial Code section 1210, which states: "Except as otherwise provided in Section 1202, the presumptions established by this code are presumptions affecting the burden of producing evidence."

The effect of a presumption "affecting the burden of producing evidence" is stated in Evidence Code section 604, as follows: "The effect of a presumption affecting the burden of producing evidence is to *require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence*, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption. Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate." (Italics added.)

Jefferson, California Evidence Benchbook (1972) section 46.3, page 801, states the operation of such presumptions as follows: "RULE: A presumption that affects the burden of producing evidence operates in the following manner:

"(a) If the basic facts giving rise to such a presumption are established by judicial notice, by the pleadings, by a stipulation, or by evidence that is not disputed by the party against whom the presumption operates, and that party either introduces no evidence as to the nonexistence of the presumed fact, or introduces evidence which the court determines is insufficient to support a finding of the nonexistence of the presumed fact,

---

bank must make such settlement before "the close of such banking day" of receipt (12 C.F.R. § 210.9), rather than before midnight of that day as provided by California Uniform Commercial Code section 4301, subdivision (1). However, when provisional settlement is made, the item may be returned "before midnight of its banking day next following the banking day of receipt." (12 C.F.R. § 210.12.) This is the same midnight deadline imposed by California Uniform Commercial Code section 4301, subdivision (1).

"(i) *the trier of fact must find that the presumed fact exists;...*" (Italics added.)

The comment of the Assembly Committee on Judiciary with respect to Evidence Code section 604 also makes it clear that it is only when contrary evidence is produced that there is any triable issue of fact; it says: "For example, if a party proves that a letter was mailed, *the trier of fact is required to find* that the letter was received in the absence of any believable contrary evidence." (Italics added.)

No reported case has been found dealing with the effect of such presumptions affecting the burden of producing evidence upon summary judgment proceedings. *People* v. *Rath Packing Co.* (1974) 44 Cal. App.3d 56, 65 [118 Cal.Rptr. 438], discussed the effect of the presumption that "official duty has been regularly performed" (Evid. Code, § 664), which is a presumption "affecting the burden of proof" (Evid. Code, § 660), and concluded that it did not relieve the moving party (the People) of the necessity to "demonstrate that there is no possible way in which Rath can claim error in the weighing procedures used...." (*People* v. *Rath Packing Co., supra*, 44 Cal.App.3d at p. 65.) Consequently, the court concluded that in the face of such a presumption, "the resisting party need only demonstrate a 'possibility' of being able to rebut the presumed..." fact. (*Ibid.*)

The ruling in *Rath* is consistent with the holding of *Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444], which states: "There is nothing in the statute which lessens the burden of the moving party simply because at the trial the resisting party would have the burden of proof on the issue on which the summary judgment is sought to be predicated. In such a case, on the motion for summary judgment, the moving party must generally negative the matters which the resisting party would have to prove at the trial. (*Canifax* v. *Hercules Powder Co.*, 237 Cal.App.2d 44, 49-50 [46 Cal.Rptr. 552]; *McClary* v. *Concord Ave. Motors*, 202 Cal.App.2d 564 [21 Cal.Rptr. 1]; *Kramer* v. *Barnes*, 212 Cal.App.2d 440, 449 [27 Cal.Rptr. 895].)" Since the placement of the burden of proof does not affect the showing required for a summary judgment, it is obvious that a presumption affecting the burden of proof is likewise irrelevant in that respect.

However, it is apparent that a presumption which so operates as to preclude the trier of fact from finding contrary thereto in the absence of

contrary evidence has a different effect. Such a presumption operates to eliminate the existence of a triable issue of fact where no contrary evidence is offered. Presumptions are properly so employed in summary judgment proceedings. "[T]he moving party is entitled to the benefit of any relevant presumptions, and if the established facts and relevant presumptions would have entitled him to a directed verdict at trial, he is entitled to a summary judgment...." (*United States* v. *General Motors Corporation* (D.C.Cir. 1975) 518 F.2d 420, 441-442.) Therefore, where there is no contradictory evidence, Evidence Code section 604 presumptions justify a summary judgment.[6]

AMS offered no evidence to contradict the proposition that the checks were "seasonably returned by the midnight deadline" (Cal. U. Com. Code, § 3507, subd. (1)(a).) Consequently, there is no triable issue in that respect.

■ *Timely Notice of Dishonor Was Established*

The requirement of notice of dishonor to impose liability upon an indorser is governed by California Uniform Commercial Code section 3508. It provides in this respect: "(1) Notice of dishonor may be given to any person who may be liable on the instrument by or on behalf of the holder or any party who has himself received notice, or any other party who can be compelled to pay the instrument. In addition an agent or bank in whose hands the instrument is dishonored may give notice to his principal or customer or to another agent or bank from which the instrument was received.

"(2) Any necessary notice must be given *by a bank before its midnight deadline* and by any other person before midnight of the third business day after dishonor or receipt of notice of dishonor.

"(3) Notice may be given in any reasonable manner. *It may be oral* or written and in any terms which identify the instrument and state that it has been dishonored. A misdescription which does not mislead the

---

[6]This conclusion appears inescapable despite the fact that in other respects "the burden of producing evidence is obviously far less than the burden of proof imposed upon the opponent of a presumption that is classified as a presumption that affects the burden of proof. (Evid. Code, § 606.)" (*Frantz* v. *San Luis Medical Clinic* (1978) 81 Cal.App.3d 34, 42 [146 Cal.Rptr. 146].)

party notified does not vitiate the notice. Sending the instrument bearing a stamp, ticket or writing stating that acceptance or payment has been refused or sending a notice of debit with respect to the instrument is sufficient." (Italics added.)

It is arguable that California Uniform Commercial Code section 4212 requires a written notice of dishonor in respect of an item as to which provisional settlement has been made by a collecting bank with its customer in order to charge back the amount of the credit given.[7]

It is apparent, however, that any insufficiency in the notification required under California Uniform Commercial Code section 4212[8] would not adversely affect the bank's right to impose indorser's liability. Subdivision (5) of section 4212 provides: "A failure to charge back or claim refund does not affect other rights of the bank against the customer or any other party."

Furthermore, the section making the collecting bank's settlement provisional so as to authorize revocation of the settlement expressly provides that the settlement is provisional "regardless of the form of endorsement or lack of endorsement. . . ." (Cal. U. Com. Code, § 4201.)

The Skoro declaration clearly states that she was present when AMS's president was advised of the return of the checks, and that in each case "such notice was given to Mr. Levine within one day after SPNB learned that the checks were being returned unpaid." These allegations were uncontradicted by any showing on the part of AMS. Oral notice of dishonor sufficient to establish liability of AMS as indorser was, therefore, adequately shown.

---

[7]California Uniform Commercial Code section 4212 allows a collecting bank to charge back a credit "if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or *sends notification of the facts*." (Italics added.)

The Uniform Commercial Code comment to section 4212 refers to California Uniform Commercial Code section 1201 for the definition of "send." Section 1201, subdivision (38), defines "send" as follows: "'Send' in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed. . . ."

In *Available Iron & Metal Co. v. First Nat. Bank* (1977) 56 Ill.App.3d 516 [13 Ill. Dec. 940, 371 N.E.2d 1032, 1037], the requirement to "'send notice of dishonor'" was construed to require a written notice.

[8]The written notices to depositors attached to the supporting declarations were dated but there was no proof when they were sent to AMS.

The foregoing disposes of the issues on this appeal. Since SPNB was entitled to judgment on the second cause of action imposing indorser's liability upon AMS in respect of the dishonored checks, reliance upon its right to revoke provisional credit given in respect of such checks is not necessary. The records of the AMS account showed that it had an offsetting credit against this liability which produced the same net liability as the account overdraft. It is, therefore, unnecessary to discuss the sufficiency of SPNB's showing of its right to recover under the first cause of action.

### Disposition

The judgment is affirmed.

Cobey, J., and Allport, J., concurred.