Filed 12/13/23  Elizondo v. Balfour Beatty Construction Co. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VICTOR M. ELIZONDO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>BALFOUR BEATTY<br>CONSTRUCTION COMPANY,<br>INC.,<br><br>        Defendant and Respondent. | A166493<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-20-588671) |

Plaintiff Victor M. Elizondo, an employee of a subcontractor, was injured while working on a construction project for which defendant Balfour Beatty Construction Company, Inc. (Balfour) was the general contractor.  The trial court granted summary judgment to Balfour on the basis of the *Privette*[1] doctrine which creates a "strong presumption under California law that a hirer of an independent contractor delegates to the contractor all responsibility for workplace safety[,] . . . [which] means that a hirer is typically not liable for injuries sustained by an independent contractor or its workers while on the job." (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 37–38 (*Gonzalez*), citing *Privette, supra,* 5 Cal.4th at p. 689.)  Elizondo appeals,

_____

[1] *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*).

1

claiming there is a triable issue as to whether the "retained control" exception to the doctrine as set forth in *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*) applies. We affirm.[2]

## BACKGROUND

Balfour was the general contractor for the construction of a 42-story residential building in downtown San Francisco. Balfour contracted with J & J Acoustics, Inc. (J&J) to perform framing, drywall, plaster and insulation work for the project.

Elizondo, a journeyman J&J employee, worked on the project installing metal " 'top track' "—a component used for framing walls—on the ceiling. J&J provided an aluminum work bench that Elizondo used to perform his job. The bench was between 38 and 42 inches high and had four legs, similar to a ladder. Elizondo would climb up the bench, stand on the top, install a section of top track, climb back down, then move the bench to the next area and repeat the process. At one point, Elizondo placed the bench so that one of the legs rested on an orange disc covering a rectangular hole in the floor. He was aware he had placed the leg on the hole cover, as he had seen covers on the floors he had previously worked on, and he thought it was safe to do so. He

---

[2] Elizondo sued not only Balfour but also ACCO Engineered Systems, Inc. (ACCO), which jointly moved for summary judgment with Balfour. Elizondo has not, however, raised any issues as to ACCO in his briefing on appeal. He has therefore waived any challenge to the judgment as to ACCO and we make no further mention of that company. (See *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [appellant forfeited argument by failing to make it in its opening brief]; *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 [" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are [forfeited] or abandoned." ' "].)

could not have placed the bench in a different location because there was debris on the floor. While he was standing on top of the bench and reaching for the top track, the hole cover moved, the leg of the bench slipped into the hole, and he fell to the floor. The hole cover was not secured in place with bolts or nails. Elizondo did not know who had installed the hole cover.

Elizondo filed suit against Balfour, asserting claims for general negligence and premises liability.

Balfour moved for summary judgment on the ground *Privette* barred Elizondo's claims. In support of its motion, Balfour provided a declaration by John Baradin, its Safety Health and Environmental Director, who attested the contract between Balfour and J&J defined J&J's scope of work, in part, as including " 'all labor, supervision, materials, equipment, tools, layout, . . . coordination, and any other facilities necessary or required to perform the Work as required.' " The contract further obligated J&J to comply with standards for work site cleanliness and adherence to the " 'Zero Harm' " safety provisions. The Zero Harm Safety Program obligated J&J to ensure that any work platform over 24 inches high was equipped with guard rails. It was undisputed the bench Elizondo had used did not have guard rails or other fall protection. The contract also obligated J&J to maintain its work areas in " 'broom-swept' " condition at all times. The contract further stated that "All safety and protection for the Subcontractors' crews and materials shall be the sole responsibility of the Subcontractor . . . ," and it required J&J to report all safety-related incidents, whether or not they resulted in injury. It was undisputed J&J did not report any incident involving Elizondo.

Baradin additionally attested, and Elizondo did not dispute, that at "no time did Balfour supervise, direct, hire or manage J&J, J&J's employees, or

3

the conduct of J&J's work at the Project, including as to Plaintiff's work on the incident date."

In opposition, Elizondo argued he was an "invitee" of Balfour and no evidence established that Balfour transferred the responsibility to cover holes to J&J or any other party and therefore Balfour retained control over the construction work for purposes of the *Hooker* "retained control" exception to the *Privette* doctrine. Elizondo submitted his own declaration, stating that had the hole cover been secured in place, as required by California Occupational Safety and Health Act (Cal–OSHA) regulations, he would have been able to do his job safely. He further averred he had read portions of the Cal–OSHA regulations pertaining to floor holes which also required floor openings to be guarded by a cover that was secured in place to prevent accidental removal or displacement. Elizondo submitted copies of both the federal OSHA and Cal–OSHA safety standards. He asserted his accident had been caused by defendant's employees' failure to secure the hole cover.[3]

The trial court granted Balfour's motion, concluding Balfour had carried its burden of demonstrating that *Privette* applied and Elizondo had not presented any evidence raising a triable issue that the "retained control" exception applied. The court reasoned, "the undisputed evidence shows that Balfour did not actively direct or participate in the drywall and framing work. . . . Plaintiff does not present any evidence that Balfour promised to

---

[3] Although Balfour filed objections to portions of Elizondo's declaration, the trial court made no evidentiary rulings. We deem the objections as having been overruled, and they are preserved on appeal "with the burden on the objector to renew the objections in the appellate court." (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 517, 534.) Balfour did not renew its objections on appeal, therefore the objections remain presumptively overruled. (*Id.* at p. 534.)

4

secure an open hole in a floor or took any actions that would constitute an affirmative contribution for the purpose of the retained control exception. All of the evidence indisputably shows that Plaintiff and his employer chose to use the work bench and to perform the work in the manner that caused Plaintiff's injury."[4]  The court subsequently entered judgment for Balfour.

## DISCUSSION

### *Summary Judgment Standards*

Summary judgment should be granted if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (*Huerta v. City of Santa Ana* (2019) 39 Cal.App.5th 41, 46.)  A defendant moving for summary judgment meets its burden of showing that a cause of action has no merit if it " 'shows that one or more elements of the cause of action cannot be established, or that there is a complete defense. [Citation.] Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists.' " (*Id.* at pp. 46–47.)  A genuine issue of material fact exists if the evidence would allow a reasonable person to find the underlying fact in favor of the opposing party under the applicable standard of proof. (*Id.* at p. 47.)

We review a summary judgment de novo, considering all the evidence in the moving and opposition papers except that to which objections were sustained. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66; *Steuer v. Franchise Tax Bd.* (2020) 51 Cal.App.5th 417, 423.)  We liberally construe the evidence in favor of the party opposing summary judgment, resolving doubts about the evidence in favor of that party. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

---

[4]  Elizondo subsequently filed a motion for reconsideration, which the trial court denied.

### *The* Privette *Doctrine*

In the "three decades since" our Supreme Court decided *Privette*, it has "repeatedly reaffirmed the basic rule that a hirer is typically not liable for injuries sustained by an independent contractor or its workers while on the job." (*Gonzalez, supra*, 12 Cal.5th at p. 41.) This rule, commonly referred to as the *Privette* doctrine, applies to any person or entity in the hiring chain. (*Sandoval v. Qualcomm Incorporated* (2021) 12 Cal.5th 256, 270, fn. 2 (*Sandoval*); *Tverberg v. Fillner Construction, Inc.* (2010) 49 Cal.4th 518, 528 (*Tverberg*).) Thus, an injured employee of an independent contractor typically cannot sue the contractor that let the subcontract. (*Tverberg*, at p. 528.)

With respect to injured employees of independent contractors, the Supreme Court has grounded the *Privette* doctrine on the availability of worker's compensation. As the court explained in *SeaBright Ins. Co. v. U.S. Airways, Inc.* (2011) 52 Cal.4th 590, 598–599 (*SeaBright*), "[i]n light of [the workers' compensation] limitation on the independent contractor's liability to its injured employee, *Privette* concluded that it would be unfair to permit the injured employee to obtain full tort damages from the hirer of the independent contractor. That was especially so because (1) the hirer likely paid indirectly for the workers' compensation insurance as a component of the contract price [citation], (2) the hirer has no right to reimbursement from the contractor even if the latter was primarily at fault [citations], and (3) those workers who happen to work for an independent contractor should not enjoy a tort damages windfall that is unavailable to other workers [citation]."

As the high court subsequently observed in *Gonzalez, supra*, 12 Cal.5th at page 41, its more recent cases "emphasize delegation as the key principle underlying [the *Privette* doctrine]: Because the hirer presumptively delegates

6

to the independent contractor the authority to determine the manner in which the work is to be performed, the contractor also assumes the responsibility to ensure that the worksite is safe, and the work is performed safely." This "presumptive delegation" of the duty to provide a safe workplace (*Sandoval, supra*, 12 Cal.5th at p. 271), in turn, insulates all those in the hiring chain from tort liability for workplace injuries suffered by an independent contractor or an employee thereof or consultant thereto. (*Id.* at p. 270, fn. 2; *Tverberg, supra*, 49 Cal.4th at p. 528.)

*Gonzalez* is particularly instructive. In that case, an independent contractor hired to clean skylights on a homeowner's roof slipped and fell on an allegedly unsafe, poorly maintained part of the roof. (*Gonzalez, supra*, 12 Cal.5th at pp. 39–40.) The owner clearly "retained control" of the roof, but that was immaterial since workplace safety had presumptively been delegated to the contractor. It was therefore the contractor's responsibility to determine how to perform the work safely in light of the hazardous condition of the roof, or to refuse to do the work. (*Id.,* at pp. 51–52, 54; see *Gravelin v. Satterfield* (2011) 200 Cal.App.4th 1209, 1211–1213 (*Gravelin*) [property owner not liable for injuries sustained by employee of contractor hired by satellite company to install satellite dish who attempted to access roof by using a small roof extension that collapsed; owner clearly retained possession and control of the roof and extension, but it was the contractor's responsibility to determine how to safely do the contracted work].)

Further, the high court expressly rejected the independent contractor's argument that the homeowner had never delegated to him the owner's "duty to maintain the roof in a reasonably safe condition." (*Gonzalez, supra*, 12 Cal.5th at p. 54.) The court explained that "while [the owner] may not have delegated any duty to repair the roof or make other structural changes

7

to it, [the owner] did delegate to [the independent contractor] a duty to provide a safe workplace to his workers and to perform the work for which he was retained in a safe manner. This encompassed a duty on [the contractor's] part to assess whether he and his workers could clean the skylight safely despite the existence of the known hazardous conditions on the roof." (*Ibid.*)

The court has identified only "two limited circumstances" in which the presumption of delegation is overcome. (*Gonzalez, supra*, 12 Cal.5th at p. 38.) The exception relevant here is that articulated in *Hooker*, wherein the court "held that a hirer will be liable where it exercises retained control over any part of the contractor's work in a manner that affirmatively contributes to the worker's injuries." (*Id.* at p. 42.) However, retained control over the safety conditions of the worksite, in and of itself, is insufficient to establish liability. (*Ibid*.) "[U]nless a landowner retains control over any part of the contractor's work *and* negligently *exercises* that retained control in a manner that *affirmatively* contributes to the injury [citation], it will not be liable to an independent contractor or its workers." (*Id.* at pp. 38–39, italics added; accord, *Sandoval, supra*, 12 Cal.5th at pp. 274–279 [discussing *Hooker* exception in further detail]; *McCullar v. SMC Contracting, Inc.* (2022) 83 Cal.App.5th 1005, 1014–1015.)

Thus, "this exception to *Privette* is not met solely because a hirer is aware that there is an unsafe condition on the worksite or knows that the contractor is engaging in an unsafe work practice. [Citation.] Something more is required, such as ' "inducing injurious action or inaction through actual direction" ' [citation]; directing ' "the contracted work be done by use of a certain mode" ' [citation]; or interfering with ' "the means and methods by which the work is accomplished." ' " (*Gonzalez, supra*, 12 Cal.5th at p. 42; *Sandoval, supra*, 12 Cal.5th at p. 276 ["Contract workers must prove that the

hirer *both* retained control [of the contracted work] *and* actually exercised that retained control in such a way as to affirmatively contribute to the injury."]; see *McCullar v. SMC Contracting, Inc., supra*, 83 Cal.App.5th at pp. 1014–1015; *Alvarez v. Seaside Transportation Services LLC* (2017) 13 Cal.App.5th 635, 641 (*Alvarez*).)

### *Application of the* Privette *Principles*

To begin with, in his opening brief, Elizondo provided no citations to the record in arguing there is a triable issue as to the applicability of the *Hooker* retained control exception. "Rule 8.204(a)(1)(C) of the California Rules of Court *requires* all appellate briefs to '[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears.' It is well established that ' "[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived. [Citation.]" ' [Citation.] This rule applies to matters referenced at any point in the brief, not just in the statement of facts." (*Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1253, italics added.) Thus, Elizondo's citations to the record in his statement of facts (which are fairly sparse) do not compensate for the total lack of record citations in the argument section.[5] (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 [record citations in a factual statement "do not cure the failure to cite evidence in the argument section of the brief, and we will not pick and choose the portions of the brief in the statement of facts that we may think are applicable to each assertion

---

[5] Elizondo's closing brief is a single page in length. It includes a "Supplemental Statement of Facts" (some capitalization omitted) which quotes one paragraph of Balfour's brief and adds one paragraph of argument without record citations, and a "Conclusion," (some capitalization omitted) also without record citations.

in the argument"]; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16 (*Barringer*) ["any reference in the brief must be supported by a citation, regardless of where in the brief that reference appears" (italics added)].) Having failed to provide record citations in support of his argument, it has been waived. (See *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620 [because appellant "failed to appropriately cite the record, he forfeited any argument that the challenged orders were erroneously issued"]; *Conservatorship of Kevin A.,* at p. 1253 [appellant "forfeited her own argument by failing to include any citations to the record in that regard"]; *Barringer,* at p. 1239 [appellate court "need not consider" argument unsupported by record citations].)

Even had Elizondo not waived his argument that there is a triable issue as to the applicability of the *Hooker* retained control exception, it lacks merit. The gist of his argument is that Balfour did not present evidence establishing that the exception does not apply. For example, he argues: "BALFOUR, has not produced any documentary evidence to establish that any company other than BALFOUR was responsible for covering the open holes on the construction site." "BALFOUR, has failed to produce any evidence to establish that any of the other 'numerous third-party (contractors)' on the jobsite had agreed to undertake the work of placing and securing the hole covers over the holes in the floors of the construction site," and "BALFOUR has not produced any oral or documentary evidence to prove that either Appellant's employer, J & J Acoustics, or any of the other sub-contractors on the Project, had the contractual obligation to cover the open holes on the floors of the jobsite with hole covers secured in place." This argument disregards the presumption on which *Privette* is grounded and the evidentiary consequences of that presumption.

10

As the Court of Appeal in *Alvarez* explained, while a defendant seeking summary judgment bears the initial burden of proving the cause of action has no merit by showing that one or more of its elements cannot be established or there is a complete defense to it, "a defendant moving for summary judgment is ' "entitled to the benefit of any relevant presumptions." ' " (*Alvarez, supra,* 13 Cal.App.5th at pp. 641–642, quoting *Security Pac. Nat. Bank v. Associated Motor Sales* (1980) 106 Cal.App.3d 171, 180.) "The *Privette* line of decisions establishes a presumption that an independent contractor's hirer 'delegates to that contractor its tort law duty to provide a safe workplace for the contractor's employees.' " (*Alvarez,* at p. 642, quoting *SeaBright, supra,* 52 Cal.4th at p. 600.)

The appellate court went on to hold "the *Privette* presumption affects the burden of producing evidence." (*Alvarez, supra,* 13 Cal.App.5th at p. 643.) It explained, "[t]he *Privette* doctrine is derived from the principle that an independent contractor's hirer generally has no right of control over the mode of doing the work contracted for and, therefore, should not be vicariously liable for the independent contractor's negligence in ensuring the safety of its workers. The presumption is a logical extension of this doctrine because it dispenses with 'unnecessary proof of facts that are likely to be true if not disputed'—that a hirer generally has ' " ' "no right of control as to the mode of doing the work contracted for." ' " ' (*Hooker, supra,* 27 Cal.4th at p. 213. . . .) The presumption thus operates solely to facilitate the resolution of particular disputes, not to further any other public policy. Accordingly, it affects the burden of producing evidence." (*Ibid.*)

" 'The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a

11

finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption.' (Evid. Code, § 604.)" (*Alvarez, supra,* 13 Cal.App.5th at p. 644.) Accordingly, "on summary judgment, a moving party need only show it is entitled to the benefit of a presumption affecting the burden of producing evidence in order to shift the burden of proof to the opposing party to show there are triable issues of fact." (*Ibid.*)

However, a presumption affecting the burden of producing evidence "does not arise until the foundational facts are established." (*Alvarez, supra,* 13 Cal.App.5th at p. 644.) What this means when a plaintiff, such as Elizondo, claims the retained control exception to the *Privette* presumption applies, is that the defendant must produce evidence that it hired the plaintiff's employer to perform work at the job site and the plaintiff was injured while working at the site. (*Ibid.*) "This evidence [is] sufficient to establish that the *Privette* presumption applie[s] and, therefore, shift[s] the burden to [the] plaintiff to raise a triable issue of fact" that the retained control exception applies. (*Ibid.*)

Accordingly, Elizondo's argument that it was Balfour's burden to present evidence that it delegated the responsibility for a safe workplace, and specifically safety in connection with the hole covers, to his employer or some other subcontractor, misses the mark. Under the *Privette* doctrine it is presumed that Balfour did so. There is also no dispute that Balfour presented uncontroverted evidence establishing the foundational facts triggering the presumption. It was therefore Elizondo's burden to present evidence raising a triable issue that the *Hooker* retained control exception applies. He presented no evidence, however, raising a triable issue this "limited" exception applies. (*Gonzalez, supra*, 12 Cal.5th at p. 38.)

As we have discussed, "this exception to *Privette* is not met solely because a hirer is aware that there is an unsafe condition on the worksite or knows that the contractor is engaging in an unsafe work practice. [Citation.] Something more is required, such as ' "inducing injurious action or inaction through actual direction" ' [citation]; directing ' "the contracted work be done by use of a certain mode" ' [citation]; or interfering with ' "the means and methods by which the work is accomplished." ' " (*Gonzalez, supra*, 12 Cal.5th at p. 42.) "Contract workers must prove that the hirer *both* retained control [of the contracted work] *and* actually exercised that retained control in such a way as to affirmatively contribute to the injury." (*Sandoval, supra*, 12 Cal.5th at p. 276.) Elizondo did not present any such evidence. To the contrary, he did not dispute Baradin's declaration testimony that at "no time did Balfour supervise, direct, hire or manage J&J, J&J's employees, or the conduct of J&J's work at the Project, including as to Plaintiff's work on the incident date." This conclusively forecloses application of the *Hooker* retained control exception.

*McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219 (*McKown*) and *Elsner v. Uveges* (2004) 34 Cal.4th 915 (*Elsner*), which Elizondo cites, are distinguishable.

In *McKown*, a companion case to *Hooker*, the plaintiff was an employee of an independent contractor hired by Wal–Mart to install sound systems in its stores. Installation of the sound systems involved running wires and installing speakers in the store ceilings. Wal–Mart requested that the contractor use Wal–Mart's forklifts whenever possible in performing the work. The forklift that Wal–Mart supplied had equipment for overhead work, consisting of a work platform along with an extension to raise the platform. For safety, the extension was supposed to be chained to the forklift

13

and the platform, in turn, chained to the forklift or to the extension. However, only one chain was provided by Wal–Mart. While his co-worker was driving the forklift and the plaintiff was working on the platform, the platform hit a ceiling pipe, disengaged from the extension, and fell to the floor, injuring the plaintiff. (*McKown, supra,* 27 Cal.4th at p. 223.) As the high court explained, this was a "suit for negligent provision of unsafe equipment" that the hirer had affirmatively provided to the independent contractor and requested be used. (*Id.* at p. 226.) As the court held in previous cases, "a hirer is liable to an employee of an independent contractor insofar as the *hirer's* provision of unsafe equipment affirmatively contributes to the employees' injury." (*Id.* at p. 222, italics added.) That is not the context here. Moreover, the high court has, in more recent cases, elucidated the scope and import of the *Hooker* retained control exception, and these cases, as we have discussed, make clear Elizondo failed to raise a triable issue that the exception is applicable here.

In *Elsner*, the plaintiff was an employee of a roofing contractor hired by the general contractor. He was injured when a scaffold collapsed beneath him at the construction site. The day before the accident, an employee of the general contractor had constructed the temporary wood plank scaffold to assist that employee's installation of plywood panels on the second story of the structure. The general contractor "acknowledged that he was directly responsible for supervising and controlling the work in order to ensure required safety practices were followed." (*Elsner, supra,* 34 Cal.4th at p. 924.) Accordingly, this was not even arguably a *Privette* case, and the issue in the case was whether evidence of Cal–OSHA provisions could be introduced "to establish standards and duties of care in negligence actions

14

against private third parties." (*Ibid.*)  The court held such evidence was admissible.  (*Id.* at pp. 935–936.)

Elizondo also included in his opening brief a section headed "A General Contractor Has a Common Law Duty to Use Ordinary Care to Provide Workers on a Construction Site with a Reasonably Safe Place to Work, to Warn of Dangers that are Not Obvious, and to Keep the Premises in a Reasonably Safe Condition."  (Some capitalization omitted.)  Not only does he cite to cases predating *Privette*, but he provides no argument and no citations to the record.  An appellant is "required to convince us, by developing his arguments, stating the law, and calling out relevant portions of the record, that the trial court committed reversible error.  [Citation.]  His failure to do so justifies rejection of his argument on this basis alone." (*Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910; see *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 [appellant waived challenge to denial of new trial motion—to " 'demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record,' "] quoting *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287].)  We therefore do not consider this point further.

## DISPOSITION

The judgment is AFFIRMED.  Costs on appeal to Balfour.

_____
        Banke, Acting P.J.

We concur:


_____
Margulies, J.*


_____
Getty, J.**


*Retired Justice of the Court of Appeal, First Appellate District assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


**Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A166493. Elizondo V. Balfour Beatty Construction