Filed 8/21/20  LNSU #1, LLC v. Aven CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LNSU #1, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARCUS AVEN et al.,<br><br>    Defendants and Respondents. | D075329<br><br><br>(Super. Ct. No.<br> 37-2017-00004042-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

Knottnerus & Associates and Wilford Knottnerus, Mark Beal Simpkins; Friedhofer and James Friedhofer for Plaintiff and Appellant.

Sepahi Law Group and Sage S. Sepahi for Defendants and Respondents.

Plaintiff and appellant LNSU #1, LLC (LNSU) appeals from a judgment in favor of defendants and respondents Marcus Aven, Green Life Construction, Inc. (Green Life) and American Safety Casualty Insurance Company following a bench trial on LNSU's operative complaint for breach of contract, negligence and recovery on a contractor's bond.  The lawsuit stemmed from Aven and Green Life's work for LNSU in refinishing hardwood flooring.  After LNSU served its expert witness designation on Aven and

Green Life, but not the attorney who had been specially appearing for them, the trial court excluded from trial LNSU's expert witness on the industry standard of care for flooring installation and finishing. The court thereafter found LNSU failed to meet its burden of proof on all of its causes of action; as to negligence specifically because it had not presented evidence from an expert that defendants fell below the standard of care in their work. LNSU contends the court erred as a matter of law by excluding its expert, warranting the judgment's reversal and remand for new trial on all causes of action. LNSU further contends that the court prejudicially erred by failing to address its pleaded theory that defendants breached an implied covenant to perform their work in compliance with the manufacturer's specifications, and find in LNSU's favor on that theory.

We need not decide whether LNSU's counsel timely served its expert designation on Aven and Green Life, or whether the court erred by excluding LNSU's standard of care expert witness. Assuming error, we hold it would be harmless in light of the fact LNSU's expert was not designated to testify on causation and damages, and the record is otherwise absent competent, nonspeculative evidence establishing defendants' conduct forced LNSU to hire another contractor to refinish the flooring, that the refinishing was necessitated by defendants' substandard work, or that LNSU suffered damages, including in diminution in the floor's value or loss of its warranty. We reject LNSU's claim that the trial court prejudicially erred by failing to rule on an implied contract breach theory related to the floor's warranty. We therefore affirm the judgment in defendants' favor.

FACTUAL AND PROCEDURAL BACKGROUND

2

Many of the basic facts concerning the parties' underlying dispute are uncontested, so we take those from the trial court's statement of decision.[1] At LNSU's request, Aven installed Junckers-brand merbau hardwood flooring at LNSU's property. Some of the wood was repurposed from LNSU's other properties and the rest was purchased new. LNSU, which had used Aven for other floor installations, was pleased with his work on the property. A third party later damaged the upstairs floor's finish. LNSU asked Aven to repair the third party's damage, so he provided an estimate to which LNSU agreed, and Aven issued an invoice. Aven's finish failed. After attempts to test with other products, Aven agreed to repair the finish at no additional

---

[1] When reviewing a judgment following a bench trial, we typically infer that the court impliedly made every factual finding necessary to support its decision. (*McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 257; *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) A proper request for a statement of decision, however, may change that standard. (*Thompson*, at p. 981.) Under Code of Civil Procedure sections 632 and 634, the court on a party's proper request must issue a statement of decision " 'explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial.' " (*Thompson*, at p. 981.) "[I]f the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, 'it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue.' " (*Ibid.*) As we summarize below, LNSU requested a statement of decision from the trial court and prepared a proposed statement of decision that did not comport with the court's rulings, but it did not object to the court's own statement of decision. LNSU's sole challenge on appeal relating to the court's statement of decision is only to the court's asserted failure to address a theory that defendants breached an implied covenant not to void the floor manufacturer's warranty. It does not challenge the court's findings on the basic facts of the parties' dispute or any other fact at issue. LNSU does not challenge the court's ruling sustaining defendants' objections to its own proposed statement of decision. In short, we are not prevented from inferring in favor of the judgment that the court impliedly made every factual finding necessary to support its decision. (*McPherson*, at pp. 257-258.)

cost to LNSU. LNSU, however, terminated Aven and hired another contractor, Hugh Staley, who sanded the floor to bare wood and refinished it.

LNSU sued Aven and his company for breach of contract and negligence. After LNSU filed a first amended complaint, Aven, representing himself, filed a general denial with affirmative defenses. In August 2017, the parties appeared for a case management conference at which the trial court advised Aven that Green Life had to be represented by counsel. By stipulation and leave of court, LNSU filed its second amended complaint, adding Aven and Green Life's contractor's bonding company as a party as well as a claim for recovery on a contractor's bond.

Representing himself and Green Life, Aven answered LNSU's second amended complaint. In early December 2017, at the continued case management conference, attorney Sage Sepahi specially appeared for Aven. In its minute order, the court again noted that Aven had answered the operative complaint on behalf of himself and Green Life, and that Green Life must be represented by counsel. It set an order to show cause as to why Green Life's answer should not be stricken for the absence of legal representation, and again continued the case management conference to December 8, 2017. Days later, attorney Sepahi filed a case management conference statement on Aven and Green Life's behalf.[2] On December 8, 2017, Sepahi advised the court he would be representing Aven and Green

---

[2] The caption lists only Green Life as the client, but the statement states elsewhere it was submitted jointly by both Green Life and Aven.

4

Life.[3] The court ordered the first expert exchange to occur on April 20, 2018, and set the matter for trial in July 2018. On December 29, 2017, Sepahi filed an amended answer to the second amended complaint on Aven and Green Life's behalf.

On April 12, 2018, LNSU's counsel Mark Simpkins served LNSU's first expert witness declaration and designation on Aven and Green Life but not Sepahi. The document identified David Newman as LNSU's expert witness on, among other things, the industry standard of care for installing and finishing merbau flooring.

On July 6, 2018, the parties filed a verified joint trial readiness conference report with attached exhibit and witness lists. The witness list included Newman as LNSU's expert. In part, the parties reported that Sepahi was Aven and Green Life's trial counsel. They reported that they had not conducted discovery or exchanged experts pursuant to the court's deadlines. In mid-July 2018, American Safety Casualty Insurance Company filed a substitution of attorney form substituting attorney Sepahi in as its counsel.

At some point, the trial date was continued to September 4, 2018. At the trial call in late August, Sepahi raised an issue concerning LNSU's expert witness designation. LNSU's counsel conceded he had not served it on Sepahi.

On August 28, 2018, attorney Simpkins applied ex parte for an order to permit Newman to testify at trial on LNSU's behalf, on grounds he timely

---

3 The minute order for that hearing identifies Sepahi as counsel present for defendants and provides: "Upon the Court's inquiry, Attorney Sepahi informs the Court he will be representing Aven . . . and the business entity Green Life Construction Inc." The minute order is unsigned and concludes: "Parties waive notice."

served the expert designation on Aven and Green Life, his failure to serve Sepahi was excusable warranting relief under Code of Civil Procedure[4] section 473, and defendants had no standing to object as they had failed to comply with expert exchange requirements. Simpkins submitted a declaration averring that on April 12, 2018, he had timely served Aven and Green Life with the expert designation, but not attorney Sepahi, because Aven had been representing himself and Green Life and thus Simpkins did not believe Sepahi was counsel of record because Aven and Green Life had not served a substitution of attorney indicating Sepahi was an attorney of record.

In opposition, defendants argued the court could not grant LNSU's requested relief under section 473, subdivision (b), and the application failed to establish good cause because LNSU's failure to serve an expert designation was unreasonable. Attorney Sepahi stated his clients would be prejudiced in the event the court permitted expert testimony when trial was to commence in less than a week. Aven submitted a declaration stating he had not received LNSU's expert designation and did not recall ever seeing it.

The trial court denied LNSU's application. The matter proceeded to trial, after which the trial court ruled LNSU failed to meet its burden of proof on its causes of action. It found Aven to be the more credible witness. It accepted Aven's testimony that he agreed to remedy the problems with the flooring at no additional cost to LNSU and was in the process of doing so when LNSU terminated him.

LNSU asked for a statement of decision addressing 29 "controverted issues," including procedural and legal questions pertaining to attorney

---

[4]     Undesignated statutory references are to the Code of Civil Procedure.

Sepahi's appearance as counsel of record in the case, the court's order excluding LNSU's expert evidence, and LNSU's expert disclosure. LNSU also asked the court to address whether defendants breached the contract, whether any breach was excused, whether LNSU performed its contractual obligations, if a breach occurred whether it caused LNSU damages, the amount of LNSU's contract damages and whether the court precluded LNSU from offering expert opinion or evidence that defendants breached the standard of care. LNSU asked the court to address similar questions as to defendants' negligence: whether defendants were negligent, if their negligence caused LNSU damages, and the amount of LNSU's damages. LNSU thereafter filed a lengthy proposed statement of decision addressing "findings of fact common to all dispositive procedural issues," as well as conclusions of law regarding LNSU's expert witness designation and defendants' representation by attorney Sepahi. The proposed statement of decision included findings and rulings of fact and law on the substantive trial issues but in *LNSU*'s favor, contrary to the court's ruling after trial. Defendants objected to the proposed statement of decision in part on grounds it sought to circumvent the court's findings and rulings.

Sustaining defendants' objections, the court issued its own statement of decision. In part, it found LNSU failed to prove the elements of breach of contract, particularly the element of breach: "To the contrary, the evidence presented showed that defendant [Aven] was ready, willing and able to perform but was prevented from doing so because of plaintiff's unwarranted termination of defendant's services." As to negligence, the court found "[t]here was no evidence presented that defendant [Aven] fell below the standard of care in his efforts to correct the defect in the upstairs finish that was damaged by an unrelated third party. Neither party provided expert

7

testimony to establish the standard of care let alone that defendant fell below the standard of care. Thus, the court was left with the testimony of the . . . parties and lay witnesses—none of whom could testify to the standard of care." The court further ruled that because LNSU's breach of contract and negligence claims failed, so did the surety cause of action against American Safety Casualty Insurance Company.

LNSU filed this appeal from the ensuing judgment.

DISCUSSION

I. <em>Exclusion of Expert Witness</em>

LNSU contends the trial court erred by excluding its expert flooring standard-of-care witness Newman from testifying at trial. It rests its claim on two grounds: First, LNSU argues it validly served its first expert witness designation on Aven and Green Life because they had not yet taken steps to substitute attorney Sepahi as their counsel. Second, LNSU argues defendants could not object to Newman's trial testimony because they did not make a complete and timely section 2034.260 designation, and the trial court did not have the ability to exclude Newman sua sponte.

We need not reach these arguments. Even if we were to conclude the trial court abused its discretion in excluding Newman as an expert, that would not by itself be sufficient to reverse the judgment. (*ABM Industries Overtime Cases*, *supra*, 19 Cal.App.5th at p. 293; *Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799.) "Rather, the 'judgment of the trial court may not be reversed on the basis of the erroneous [exclusion] of evidence, unless that error was prejudicial.' [Citations.] Article VI, section 13, of the California Constitution further provides that 'a judgment may not be set aside based on the erroneous [exclusion] of evidence "unless, after an examination of the entire cause,

8

including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." ' [Citations.] 'In civil cases, a miscarriage of justice should be declared only when the reviewing court, after an examination of the entire cause, including the evidence, is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.] Thus, our task on appeal is to determine whether an abuse of discretion has occurred and, if so, whether it is reasonably probable that a result more favorable to [LNSU] would have been obtained absent the error." (*ABM Industries*, at p. 293; see Evid. Code, §§ 353, 354; *Ajaxo, Inc. v. E\*Trade Financial Corporation* (2020) 48 Cal.App.5th 129, 185.) "In making this assessment 'we are not to look to the particular ruling complained of in isolation, but rather must consider the full record in deciding whether a judgment should be set aside.' [Citation.] The appellant bears the burden of establishing that the error was prejudicial." (*Grail Semiconductor*, at p. 799.)

Presuming error, we conclude LNSU cannot meet its burden to show prejudice. LNSU's operative complaint alleged that defendants breached their duty to plaintiff by failing to do the project work "in a good and workman-like manner, in compliance with governing building codes and regulations, the manufacturer's specifications and recommendations, and in compliance with industry customs, practices, and standards . . . ." It alleged more specifically that defendants installed the flooring crooked in at least one room, used an improper finish not manufacturer-approved or recommended, improperly applied the finish leaving fibers, bubbles and other imperfections, then damaged the factory finish of the wood by attempting to sand off the improper finish.

9

LNSU's proffered expert declaration stated that Newman had been installing and refinishing wood floors for over 20 years and was very familiar with the type of merbau flooring installed in the home as well as the industry standard of care for installing and finishing the wood. It provided that Newman would testify that defendants' refinishing work was below the standard of care in both the selection and application of finishing material and the manner in which the work was performed. Newman's inspection report detailed the problems with photographs.

Concededly, defendants did not object to Newman's qualifications to testify on the standard of care in response to LNSU's request for leave to present him and Newman disclosed sufficient knowledge of the subject to entitle his opinion to go to the trier of fact. (See *Chadock v. Cohn* (1979) 96 Cal.App.3d 205, 209 [where expert has sufficient knowledge of a subject, the degree of his knowledge goes more to the weight of the evidence than its admissibility].) His testimony was required on the industry standard of care and its breach—factual questions for LNSU to prove negligence. (*Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1239 [whether party failed to conform to standard of care is a question of fact if reasonable minds can differ]; *Frantz v. San Luis Medical Clinic* (1978) 81 Cal.App.3d 34, 39.) "In negligence cases arising from the rendering of professional services, as a general rule the standard of care against which the professional's acts are measured remains a matter peculiarly within the knowledge of experts. Only their testimony can prove it, unless the layperson's common knowledge includes the conduct required by the particular circumstances." (*Unigard Ins. Group*, at p. 1239.)

However, LNSU was not merely required to show breach, but also that defendants' negligent acts or omissions proximately caused damage. (See

10

*Stephen v. Ford Motor Co.* (2005) 134 Cal.App.4th 1363, 1370.)  To establish legal causation, a plaintiff must show that a defendant's act or omission "was a 'substantial factor' in bringing about the injury"; requiring evidence of "some substantial link or nexus between omission and injury."  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 778; *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155 ["Regarding causation, 'the plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is *more probable than not* the negligent act was a cause-in-fact of the plaintiff's injury' "].)  Expert testimony is required to establish causation where the complexity of that issue is beyond common experience.  (*Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1569; see *Inouye v. Black* (1965) 238 Cal.App.2d 31, 34 [esoteric negligence causation demands expert testimony].)  "A plaintiff cannot recover damages based upon speculation or even a mere possibility that the wrongful conduct of the defendant caused the harm.  [Citations.] Evidence of causation must rise to the level of a reasonable probability based upon competent testimony.  [Citations.]  'A possible cause only becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action.' " (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 133.)  It was LNSU's burden to establish causation by competent evidence.  (*Thompson v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352, 1371.)

Here, Newman's expert declaration did not state he would testify how Aven's deficient work (versus some defective product) caused LNSU's damages, or even about LNSU's damages in general.  The declaration does not state that Newman would render opinions on depreciation in the

11

flooring's value, or that he was familiar with the Junckers warranty and the impact of the work on any flooring warranty. Nor does Newman's report address any such issues or opinions.[5] LNSU's expert witness declaration was required to provide, among other things, "[a] brief narrative statement of the general substance of the testimony the expert is expected to give." (§ 2034.260, subd. (c)(2); see *Bonds v. Roy* (1999) 20 Cal.4th 140, 148.) If LNSU wished to expand the scope of its expert's testimony beyond the standard of care issue identified in the declaration, it was required to move for leave to amend its expert witness declaration. (§ 2034.610, subd. (a)(2); see *Bonds*, at p. 145.) Otherwise, an opinion offered by any party who has "unreasonably failed" to comply with these requirements "shall be excluded." (§ 2034.300; see *Bonds*, at pp. 146-147; see *DePalma v. Rodriguez* (2007) 151 Cal.App.4th 159, 164 ["It is well[-]settled that an expert may be precluded

---

[5] Newman's report documented his inspection of the flooring in May 2017. LNSU manager Doug Grimes was present. Newman's report relates that Grimes was "concerned with a white or hazy appearance to the finish flooring surface." According to Newman, Grimes also told him that for unknown reasons, the contractor refinished the floor with a high gloss finish rather than the matte finish applied by the manufacturer. Newman reported: "Upon completion of the refinish process bumps, bubbles, hairs, and streaks were visible in the finish surface. The contractor came out to refinish the floor a 2nd time via the screen and recoat process. [Grimes] halted this process after hairs bubbles and streaks were visible in rooms that had been completed during the 2nd refinish." Newman concluded that the hairs, bumps and bubbles were "a refinishing technician concern" that "should be correctable via a screen and recoat refinishing process." He stated the affected planks were due to a "substance or contaminant preventing the applied finish from curing properly," another refinishing technician concern, and that planks "may need to be replaced rather than refinished." Newman's report stated that "the screening portion of the refinishing process needed to be completed, the floor cleaned, and new finish applied to correct the appearance to these affected areas. This too is a refinishing technician concern as the refinishing process has not been completed."

12

from testifying at trial on a subject that was not described in his expert witness declaration"].) An expert declaration that omits or inaccurately describes the substance of an expert's expected testimony is akin to a failure to disclose the expert at all. (*Bonds*, at pp. 146-147.)

Further, the trial court acts as a gatekeeper to exclude expert testimony based on reasons unsupported by the material on which the expert relies, or that is speculative. (*Sargon, supra*, 55 Cal.4th at pp. 771-772; *Apple Inc. v. Superior Court* (2018) 19 Cal.App.5th 1101, 1118.) Given the limited scope of Newman's opinion and the materials relied upon by him—his personal inspection, photographs and the minimal observations of LNSU manager and witness Doug Grimes—any opinions from Newman on causation and damages—particularly warranty damages—would have been speculative and lacking factual foundation.

Apart from the absence of expert testimony, the record contains no competent, nonspeculative evidence from LNSU's nonexpert witnesses on causation and damages. Though the evidence need only be such as to afford a reasonable basis to conclude it is more likely than not Aven's conduct was the cause in fact of LNSU's damage (see *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1243; *City of Modesto v. Dow Chemical Co.* (2018) 19 Cal.App.5th 130, 154), the evidence at trial here permitted a trier of fact to conclude the unsatisfactory result stemmed from a defective finish or other environmental conditions. Aven testified that the finish LNSU demanded he use did not perform as well as the finish he had used originally to successfully install the flooring or other commercial grade finishes. He also testified that the environmental conditions were unsuitable for the finish application. Aven testified that he believed the Junckers finish was the problem and told LNSU's manager, who insisted that he continue to use it. LNSU's witnesses

13

testified about their dissatisfaction with the result but did not negate the possibility of defective materials or environmental conditions as a factor. Indeed LNSU's witness Grimes testified that upon seeing the result, "*I didn't know what the error was caused by, whether it was the wrong material or a bad batch or whatever*, but, obviously—I mean, everyone who went up there would say, 'What's wrong with this floor?' " (Italics added.) On this record, LNSU did not establish it was more likely than not Aven was the cause in fact of the poor result.

We reach the same conclusion on damages. LNSU's damages claims at trial differed significantly from its pleadings. Its operative complaint alleged it had incurred damages, including damage to the merbau flooring, estimated to exceed $200,000. In opening statements, LNSU's counsel admitted LNSU had not suffered actual damages from any warranty issues.[6] Following trial, however, counsel asked the court to award LNSU $19,271[7] in damages. Counsel argued LNSU's damages were caused not by any defective product, but by Aven's incompetence as evidenced by his violation of laws governing home improvement contracts, and the fact Aven did nothing to advise LNSU that his actions "could have negative impacts on the warranty." LNSU

---

[6]    Counsel argued: "[I]t's hard to quantify, but another important element of damages was because of the finishing—the refinishing that Mr. Aven did, he voided the warranty—the manufacturer's warranty on the product. That is something hard to quantify, because *we don't have any actual damages*. We haven't had to go back for warranty repairs yet, if at all. [¶] But because of what he did and because he didn't check with the manufacturer and because he didn't get the manufacturer's approval to use different products in the finish, he actually voided the warranty." (Italics added.)

[7]    Counsel's calculation of LNSU's damages was off by one dollar.

sought $5,596 for its cost of repair ($8,325 invoiced by Staley, minus $2,728 it would have paid Aven for a "screen and recoat"); $10,035 in diminution of the flooring's value, calculated by discounting the cost of the wood 50 percent for the loss of its factory finish and part of the wood; and $3,640 for lost warranty value.

This record does not contain evidence proving these elements of damage to a reasonable certainty. " 'Whatever its measure in a given case, it is fundamental that "damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery. [Citations.]" [Citations.] However, recovery is allowed if claimed benefits are reasonably certain to have been realized but for the wrongful act of the opposing party.' " (*Moore v. Teed* (2020) 48 Cal.App.5th 280, 292, quoting *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 989.) At trial, LNSU's manager Ponani Sukumar testified that after Aven unsuccessfully attempted to repair the upper floor and performed three different tests in further efforts to correct the repair, Sukumar told Aven he was going to hire someone else to correct the work. Grimes testified that Aven had "no hesitation" that it was his responsibility to fix the floor at Aven's own expense. Aven confirmed he never refinished the floor; he had micro-abraded it, prepared it for recoat and was in "mid system" when Grimes dismissed him from the project. The trial court, which credited Aven's testimony over that of LNSU's witnesses, found that defendants were prevented from performing repairs because LNSU terminated them and hired someone else. The evidence shows LNSU took it upon itself to hire and pay its new contractor, Staley.

Nor is there evidence about the value of the Junckers warranty or the terms of the warranty itself. Staley did not address warranty issues. Aven testified that while he was in process of attempting to test products at

15

Grime's request, he contacted Junckers, who informed him that as long as the factory finish was on the floor, it would not void the flooring warranty. Though LNSU's counsel questioned Aven about the warranty and purported to read portions of it, counsel's questions are not evidence (*Cuenca v. Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d 985, 998), and Aven did not admit that his work voided any warranty. Nor is there testimony from any party as to the value of such a warranty.

Finally, there is no competent evidence as to the diminution in value of that portion of the upper flooring refinished by Staley. Admittedly, California law requires only that a party present some reasonable basis for computing damages, and damages may be approximated. (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 570; *Sargon, supra*, 55 Cal.4th at p. 775.) But the record still must contain evidence of the *existence and fact* of damage by which to make such an approximation. (See *Sargon, supra*, 55 Cal.4th at p. 774 [fact of damage must be certain]; *Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 921 [once cause and existence of damages has been so established, recovery will not be denied because damages are difficult of ascertainment]; *Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 389.) Here, LNSU did not present evidence from which a trier of fact could conclude LNSU's flooring diminished in value, much less reasonably calculate the amount of such diminution.

## II. *LNSU's Implied Contract Claim*

Apart from the court's exclusion of its expert witness, LNSU contends the trial court separately prejudicially erred by failing to rule on its contract breach theory that Aven and Green Life's flooring work voided LNSU's 25-year warranty from Junckers. LNSU argues the court was bound to rule on

16

the question after LNSU requested a statement of decision having such a finding under section 632. It maintains the evidence is undisputed on the point, compelling a verdict in its favor.

We are unpersuaded. First, the trial court sustained in full defendants' objections to LNSU's proposed statement of decision, which improperly made findings in its favor contrary to the court's oral ruling after trial. The court's ruling effectively struck LNSU's proposed statement of decision, and LNSU presents no argument as to why that ruling was incorrect. Second, LNSU did not object to the court's final statement of decision or point out any asserted omissions, and it cannot be heard to complain about the court's final statement of decision for the first time on appeal. (*In re Marriage of Arceneax* (1990) 51 Cal.3d 1130, 1134, 1138 [when court issues a statement of decision, a party claiming deficiencies therein must bring such defects to the trial court's attention; it is "unproductive to deprive a trial court of the opportunity to correct such a purported defect by allowing a litigant to raise the claimed error for the first time on appeal"]; see *Damiani v. Albert* (1957) 48 Cal.2d 15, 18 ["points not urged in the trial court may not be urged for the first time on appeal"].) Third, we disagree with LNSU that Aven's testimony—in which he stated he was not a nationally-approved Junckers contractor and did not tell LNSU that fact—established that the Junckers warranty had been voided by his work. In sum, LNSU has not demonstrated error in connection with any implied contract claim based on a voided warranty.

17

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.

18